**E-FILED**
Wednesday, 20 April, 2016  10:44:42 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| VICTOR JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-2012 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>O R D E R</u>

On December 30, 2015, a Report & Recommendation was filed by Magistrate Judge Jonathan Hawley recommending that Jackson's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 be granted, his sentence be vacated, and that he be resentenced after awarding him a 3-point reduction for acceptance of responsibility. The Government timely objected to the Report & Recommendation, and Jackson responded to that objection. This Order follows.

### DISCUSSION

The relevant procedural history is sufficiently set forth in the Report & Recommendation of the Magistrate Judge. Suffice it to say that this matter is before the Court on Petitioner's claim that he received ineffective assistance of counsel in his criminal case when counsel misinformed him that he would not be eligible for sentencing under the Fair Sentencing Act if he pled guilty. On December 11, 2015, an evidentiary hearing was held before United States Magistrate Judge Hawley, who then issued this Report & Recommendation. The Report & Recommendation notes that Mr. Ratcliffe provided deficient assistance when he incorrectly

advised Jackson that he had to go to trial in order to preserve his FSA argument and recommends that he be resentenced to adjust his guideline range to what it would have been had Petitioner pled guilty and received the three-point reduction for acceptance of responsibility.   The Court has reviewed the case file of the underlying criminal proceedings, as well as the transcript of the evidentiary hearing and relevant pleadings.

The Court agrees with the Report & Recommendation up to and including the conclusion that counsel's representation was deficient when he advised Petitioner that he could not preserve his right to be sentenced under the FSA if he entered a guilty plea.  From that point, however, the Court respectfully disagrees and rejects the remainder of the Report & Recommendation, as the Court does not find that objective evidence in the record as a whole establishes a reasonable probability that but for trial counsel's errors, the result of the proceeding would have been different.  *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Foster v. United States*, 735 F.3d 561, 566 (7th Cir. 2013).

Although the Court has found that counsel provided deficient advice with respect to Petitioner's ability to preserve his right to be sentenced under the FSA, Petitioner's self-serving assertions are insufficient to establish that he would have entered into a guilty plea under any circumstances.  After losing his jury trial and appeal of his conviction, Jackson for the first time made the claim that he had wanted to plead guilty rather than go to trial.  All of the contemporary evidence from that time period prior to conviction refutes this new assertion and establishes that Jackson was manning the helm of his defense throughout the criminal case.

Clearly, Jackson had the FSA issue on his mind.  However, he had many opportunities to address this issue with the Court.  Defendants are not typically shy about addressing issues to the trial judge, and Jackson certainly wasn't.  He wrote a number of letters complaining about his

counsel, but these letters actually complain that his attorney wanted him to plead guilty and restate Jackson's contemporaneous insistence that he go to trial.

A February 28, 2011, letter to his attorney references a list of motions that he would like the attorney to file on his behalf and the expectation that he would receive an immediate response confirming that his requests had been honored. The list of motions attached is a compendium of possible pretrial motions from National Legal Professional Associates identifying no less than 71 motions that he expects counsel to file. On March 6, 2011, another letter to his attorney requests that the attorney file a motion to have the language in the Criminal Complaint amended to change the reference to a "confidential source" to refer to a "confidential informant" based on his understanding that a confidential source will not testify so that there "won't be any reason why we can't cross-examine his/her testimony." A letter to the Court dated March 27, 2011, complains:

> From the day of our initial visit, he has been pushing me to the point of border-line [sic] coercion, (not advising) to plead guilty. It is my right to choose the approach I feel is the best in attaining the greatest outcome for my case. He should help represent and navigate me in that avenue to the best of his ability regardless of whether he agree [sic] with my decision or not.
>
> Ten months have gone by and I have yet to examine lab reports, the discovery, police reports, surveillance tapes, criminal complaints, search warrants, arrest warrants or any other valuable information for my defense. . . .
>
> Finally, on 3/16/11 Mr. Ratcliff visited with me but to my dismay, I was met with a combative and hostile attitude from him because I would not adhere to his demand to plead guilty, clearly not the route I want to take.

When asked about these letters during the Evidentiary Hearing, Jackson was asked why he wrote those letters, and his response was, "I wrote these, these sentences right here, just

giving a, just giving a fact that my lawyer, he had stated to me that I had to go to trial to preserve the issue – just to give an understanding that I had to go to trial to preserve the issue as far as the FSA." (Transcript of 12/11/15 Evidentiary Hearing at 18)  However, this explanation bears no reasonable relationship to the clear and plain language of his correspondence or his subsequent discussions with the Court, during which his desire to plead guilty and the FSA are never even mentioned in the letters that were written after he learned on February 25, 2011, that his co-defendant was pleading guilty and reserving his rights under the FSA.  It would only have been reasonable for him to attempt to clarify the glaring inconsistency between the advice he claims to have been given by an attorney that he is clearly dissatisfied with and the advice being given to his co-defendant.

The transcript of the initial sentencing hearing also reveals no indication that Jackson ever mentioned his concerns about the FSA or a desire to have pled guilty.  Had he truly wanted to plead guilty and not wanted to go to trial, it would again only have been reasonable to alert the Court to his plight at some point or at least to have sought clarification his situation, particularly as Jackson had not hesitated to express his concerns to the Judge in the past.  If he had made any such remark, Jackson would have found a willing listener in Judge McCuskey, who was well known for his lengthy back and forth communications with defendants during their statements of elocution.

There was discussion at his original sentencing regarding the fact that the probation officer had mistakenly given Jackson the three-point reduction for acceptance of responsibility when preparing his presentence report.  Judge McCuskey noted the error several times and made sure that incorrect references to acceptance of responsibility were removed from the report, expressly distinguishing Jackson's situation from that of his co-defendant who did plead guilty.

4

(Transcript of 7/8/11 Sentencing at 6-8, 10) Judge McCuskey stated, "That last sentence shouldn't be in there because he didn't accept responsibility, as Mr. Kelly did, by pleading guilty in advance and saving the government the cost of a trial.  He went through the trial, was found guilty.  So the last sentence should be taken out." *Id.*, at 8.  The probation officer did not state the reason she had initially awarded the credit, stating only that it was a mistake.  Again, it would only have been reasonable, had Jackson truly wanted to plead guilty at the time, for him to have spoken up and made the Court aware of the fact that he had wanted to plead guilty but was duped by counsel into proceeding to trial or to have argued that he should nevertheless receive the reduction because he was essentially denied his ability to plead guilty.  No such comments were made.

The following dialogue then transpired:

Judge McCuskey:        Has she captured correctly the objections
                       that you had made, or do we still have –
                       need to have some language clarifications to
                       those objections?

Mr. Ratcliffe:  She has captured the objections Mr. Jackson has
                made.

Judge McCuskey:        And you've made those for him?

Mr. Ratcliffe:  Yes.

Judge McCuskey:        Okay.  Mr. – you've discussed it with him,
                       and then you made the objections for him,
                       forwarding them to Ms. Brown?

Mr. Ratcliffe:  That is correct.

Judge McCuskey:        Okay.  Mr. Jackson, you indicated that you
                       had received both the presentence report and
                       the revised report by U.S. Mail.  And now
                       you've had a chance to review the
                       objections that have been set forth on pages

22, 23, 24, and page 25, ending on 26, that
Mr. Ratcliffe's made on your behalf.  Are
those the objections that you want the Court
to receive and rule on today, on those pages?

Mr. Ratcliffe:  If I could just have a moment, Your Honor.

Judge McCuskey:     Okay.

(Brief pause in proceedings)

Mr. Ratcliffe:  Mr. Jackson wishes to proceed today.

Judge McCuskey:     Okay.  So, Mr. Jackson, are you satisfied
that the objections that Mr. Ratcliffe's made
on your behalf have been included in the
presentence report here, the revised report?

Mr. Jackson:   Yes, sir.

Judge McCuskey:     Okay.  And we will be proceeding on ruling
on those objections.  Did you have any other
objections that haven't been included in this
revised report?

Mr. Jackson:   No, sir.

(Transcript of 7/8/11 Sentencing Hearing at 14-15) There was no indication from Jackson that he

was disgruntled about not receiving the reduction for acceptance of responsibility or that he

wished to assert any additional objections.  The dialog also indicates that Petitioner was very

involved in his case and strongly suggests that he was directing his defense.

This suggestion is confirmed by Mr. Ratcliffe when given the opportunity to make a

statement on his client's behalf:

Mr. Ratcliffe:  May it please the Court, Ms. Coleman, Victor.  I've
been a lawyer for a long time, 28, almost 29 years.
I've, unfortunately, done a lot of sentencing
hearings.  I met with Mr. Jackson for nearly two
hours on Tuesday, today being Friday, discussing
the entire time the sentencing.  Mr. Jackson has

6

> given me very specific instructions, and I will now
> follow them.
>
> I ask the Court to give him the minimum sentence.
> Thank you.

(Transcript of 7/8/11 Sentencing Hearing at 30-31) Clearly, this excerpt establishes who was in fact in control of the direction of his case and that Petitioner was still calling the shots at sentencing.

Finally, in his statement of elocution, Jackson made no reference to the FSA or his desire to have pled guilty to receive acceptance of responsibility.  Nor is there any mention of any dissatisfaction with the process or the posture that his case was in at the time of sentencing, even after hearing the Court's repeated comments regarding his ineligibility to receive the three-point reduction for acceptance of responsibility because he went to trial.  In fact, his statement of elocution is as follows:

> Defendant Jackson:    Yeah, ladies and gentlemen of the Court and with extended greetings to my close family and friends, good afternoon.  As far as I can remember, I've always believed that all things that happen in our lives are meant to be: meant to teach, meant to learn, and meant to endure.  Everything is in God's control; and I stand firm in my beliefs that God has directed my path, especially through this experience, to lead me to a greater cause.
>
> I've learned so much since I've been in here this last year.  I've learned that my priorities were out of order and that I should always have God at the top.  This situation has taught me how to love unconditionally from the people who have loved me unconditionally, and for them I am truly grateful.

7

Mom, it is an honor to be your son.  From you, I have learned strength and true love.  Lord's will, one day I'll be able to be the son you always knew I could be.

To my dad, I appreciate you being there for me through all this.

I am also proud to be a friend and family to my friends and family who have been there for me and have never given up on me and have been – and because of your example, I would never give up.  I am so sorry for having put you through all this.  I'm saddened that my children and I have to separate for a time.  I miss you, and I love you so much.  I will do whatever it takes to come home to you.  God will get us through this.  Thank you, and God bless you all.

(Transcript of 7/8/11 Sentencing Hearing at 31-32)

While Jackson's direct appeal was pending, the United States Supreme Court decided *Dorsey v. United States*, 132 S.Ct. 2321, 2329 (2012), which increased the drug amounts triggering mandatory minimums and held that the FSA applied to all defendants sentenced after the effective date of the Act regardless of when their conduct occurred.  Jackson's sentence was vacated and remanded for resentencing under the FSA.  On remand, it was agreed that Jackson's new guideline range was 262 to 327 months.  Judge McCuskey ultimately sentenced him to 200 months' imprisonment, which included a 62-month variance from the bottom of the guideline range due to his "rehabilitative potential" as demonstrated by his post-incarceration conduct.  In doing so, Judge McCuskey engaged in one of his famous dialogs with Jackson.

Judge McCuskey:        I couldn't give you a break before because you're a career offender and you're a hardhead.  In fact, when you went to trial, I know Bruce Ratcliffe told you, you know, nobody's won a jury trial in this courtroom

8

in 13 years, you're going to get a big sentence for doing that, and you did.  And now it's 15 years nobody's won in this courtroom because the government doesn't take cases to trial they can't win.  And if you wonder about Count 3, it was one not guilty, 11 guilty.  You weren't even close.  So you had three counts, you had 36 votes, and you got one and the government got 35.  Wasn't a smart deal going to trial. . . .

So because you went to trial, you didn't get acceptance of responsibility, you're looking at 360 to life, and at that time I gave you what I thought was the appropriate minimum sentence for a career offender with a lot of drug convictions rolling the dice in Federal Court with a lawyer telling you not to do it.  Obviously at that point I thought you were tone deaf, couldn't hear, maybe couldn't think, even though you showed that you could get credit hours at McMurray, you can speak like the top 25 percent of the class not like the bottom eight people. . . .

I will depart below the 262 and the sentence today will be 200 months.  A stiff sentence for a career offender, but obviously a long way from that day you rolled the dice with the jury and guaranteed yourself 360 months. . . .

And if you want to make another mistake, I don't know how many times I told you you shouldn't have gone to trial, you may appeal today's judgment and sentence, which will give the government a chance to tell the Seventh Circuit Court of Appeals I made a big mistake and you need a higher sentence. That has happened before, people have done that, so if they haven't shot themselves in the foot once, they just shoot themselves in the head the second time. . . .

9

Any questions about your appeal rights,
Victor, or anything else?

DEFENDANT JACKSON:    No, sir.  I'd like to thank you.
Appreciate it.

(Transcript of 1/29/13 Resentencing Hearing at 23-31) Thus, at resentencing, the record

confirms that Jackson was a "hardhead" who insisted on going to trial despite the advice of

counsel and apparently also the presiding judge.  Even when he clearly had the sympathetic ear

of Judge McCuskey and was being criticized for basically having been a fool by going to trial,

Petitioner did not  mention that he really didn't want to go to trial but, based on the advice of

counsel, believed that he had to in order to preserve his rights under the FSA.

In contrast to Jackson's statements during the Evidentiary Hearing that he never would

have gone to trial had he not been misled about his ability to preserve his rights under the FSA in

a plea agreement, Jackson's former counsel testified under oath that he and Jackson differed in

their opinions of the strength of the Government's case against him, with Jackson not believing

that the case against him was as strong as Ratcliffe did.  He advised Jackson to enter a plea based

on his view of the Government's case but that no formal plea offers were ever generated because

Jackson was adamant about wanting a trial.  Ratcliffe stated that he discussed the possibility of

entering a blind or open plea with Jackson, which would not waive any sentencing arguments

that he could make, and Jackson rejected that suggestion. (Transcript of 12/11/15 Evidentiary

Hearing at 48-49)  He further indicated that he never discussed any FSA aspect of the co-

defendant's plea with Jackson and did not advise him that he had to go to trial to retain his rights

under the FSA.  *Id.*, at 51.  "Mr. Jackson never told me that he wanted me to explore plea

agreements.  It was trial the entire time."  *Id.*, at 69.

10

As noted by the Magistrate Judge, Ratcliffe's testimony was at times unclear or contrary to the instinct of someone well-versed in federal criminal law and procedure.  This affects the weight to be attributed to his recollection of the events that transpired during Jackson's representation and even supports a finding that Ratcliffe's performance was constitutionally deficient.  And if the record merely consisted of the testimony of Ratcliffe and Jackson, the Court may have reached the same ultimate conclusion as the Report & Recommendation.  However, given the other evidence of record, as discussed above, the Court disagrees as to the end result.

In determining whether ineffective assistance of counsel has resulted in prejudice to the Defendant, he must show that "but for the ineffective advice of counsel there is a reasonable probability that [a] plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe that under the judgment and sentence that in fact were imposed."  *Lafler v. Cooper*, 132 S.Ct. 1376, 1385 (2012).  It is appropriate to consider Defendant's earlier expressed insistence on going to trial, righteous indignation that his counsel wanted him to plead guilty, and lack of any indication that he was willing to accept responsibility for his conduct.  *Id.*, at 1389.

The evidence of record prior to the filing of the present § 2255 Motion consistently establishes that Jackson would heed no advice suggesting the entry of a guilty plea and that he was absolutely insistent on going to trial.  Jackson was dissatisfied with his counsel from the start of the proceeding and didn't hesitate to communicate his displeasure to the Court.  If Jackson truly had become aware of a conflict between the advice that Kelly was receiving and

11

the advice that he was receiving from Ratcliffe, it is incomprehensible that he would not have spoken up at some point to question the inconsistency, particularly during the sentencing hearing when he could see the effect that his decision to go to trial was going to have on his sentence. The record, considered in its entirety, compels the conclusion that Petitioner's present position is nothing more than taking advantage of an error by counsel in an attempt have his cake and eat it, too.  As a result, the Court cannot find any reasonable probability that but for the erroneous advice of counsel, the result of the proceeding would have been different, as there is no reasonable probability that Jackson would have taken a guilty plea in any event or that his sentence would have been less severe than the 200-month sentence that was ultimately imposed by Judge McCuskey.[1]

## CERTIFICATE OF APPEALABILITY

To obtain a certificate of appealability, a petitioner must make "a substantial showing of the denial of a constitutional right."  28 U.S.C § 2253(c)(2).  The petitioner must also show that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."  Id.

---

[1] This sentence represented a 62-month variance from the bottom of the applicable guideline range and was given to reward Jackson for his post-conviction rehabilitative conduct while in custody.  There is no basis for concluding that this reduction would have been made had Jackson been sentenced in accordance with the FSA the first time or that his sentence would have gone to the bottom of the 185-235 month guideline range that would have been in play if he had pled guilty and been sentenced under the FSA.

Given that the Report & Recommendation of the Magistrate Judge recommended that relief be granted, the Court cannot find that no reasonable jurist could conclude that Jackson met his burden of demonstrating actual prejudice as a result of his counsel's deficient performance. Accordingly, this Court will issue him a certificate of appealability.

## CONCLUSION

For the reasons set forth above, the Report & Recommendation of the Magistrate Judge [36] is ADOPTED IN PART and REJECTED IN PART.  Petitioner's Motion to Vacate, Set Aside, or Correct Sentence [1] is therefore DENIED, and the Court issues a Certificate of Appealability.  This matter is now terminated.

ENTERED this 20th day of April, 2016.


s/ James E. Shadid
James E. Shadid
Chief United States District Judge

13